IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


HALLIBURTON ENERGY
SERVICES, INC.,

        **Plaintiff,**

        v.

ADAM L. SYNDER, et al,

        **Defendants.**

Civil Action 2:17-cv-349
Judge Michael H. Watson
Magistrate Judge Jolson

## REPORT AND RECOMMENDATION

This is an action for fraud, declaratory judgment, and injunctive relief. The Undersigned was assigned to issue a report and recommendation as to: (1) Halliburton Energy Services, Inc.'s ("Halliburton") damages, including declaratory and injunctive relief, pursuant to the Court's November 16, 2017 opinion and order, granting default against SMS Management Services, LLC ("SMS") (Doc. 61); and (2) Halliburton's Partial Motion for Summary Judgment against Adam L. Snyder ("Snyder") and SMS (Doc. 102), pursuant to the Court's referral order on August 29, 2018. (Doc. 103). For the reasons set forth below, it is **RECOMMENDED** that Halliburton's Partial Motion for Summary Judgment be **GRANTED in part**, consistent with this Report and Recommendation, that Halliburton be **GRANTED** summary judgment on Snyder's remaining negligent supervision counterclaim, and that final judgment in this matter be entered in favor of Halliburton for $507,372.29.

**I.    BACKGROUND**

In broad terms, Halliburton alleges that Snyder and SMS fraudulently induced it to enter into a lodging contract and subsequently charged Halliburton beyond the contractual rate. (*See*

*generally* Doc. 10). After Halliburton ceased use of the apartments in February 2017, Snyder, as the owner of SMS, sent Halliburton a letter claiming that it was in breach of the "Sole and Exclusive Lodging Vendor Contract and Service Agreement." (Doc. 44 at ¶ 81; Doc. 10 at ¶ 81, Doc. 10-7). Halliburton then brought the present lawsuit. (Doc. 10).

Plaintiff Haliburton filed its First Amended Complaint ("Complaint") (Doc. 10) against Snyder, SMS, and other parties whom Halliburton contended worked with Snyder and SMS, Ohio Valley Corporate Housing, LLC ("OVCH") and Emily Shortall ("Shortall"). Halliburton asserted claims for fraud against all Defendants (Counts One and Two), misappropriation of the name or likeness of Halliburton against Snyder and SMS (Count Three), conspiracy against all Defendants (Count Four), and declaratory relief against Defendants (Counts Five, Six, and Seven). Halliburton also sought declaratory and injunctive relief in connection with Snyder's and SMS's allegations that Halliburton was liable on a purported "Sole and Exclusive Lodging Vendor Contract and Service Agreement" and that Snyder and SMS were agents of Halliburton. (Doc. 10, ¶ 107–21).

Snyder, proceeding *pro se*, answered Halliburton's Complaint and asserted counterclaims against Halliburton. (Doc. 44). Halliburton then moved to dismiss Snyder's counterclaims. (Doc. 46). The Court granted the motion in part, dismissing all of Snyder's counterclaims except his negligent supervision counterclaim. (Doc. 85). Snyder also improperly attempted to represent SMS and made numerous filings on its behalf. (Docs. 19, 26, 29, 32). Halliburton moved to strike these filings (Doc. 33) and moved for default against SMS (Doc. 48). The Court granted that motion. (Docs. 49, 61). Consequently, SMS has admitted the allegations in Halliburton's Complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied. If a responsive pleading is not required, an allegation is considered denied or avoided."). Given this

procedural posture, the Court instructed Halliburton to file a summary judgment motion as to its damages against SMS no later than August 17, 2018. (Doc. 89). Additionally, the Undersigned provided the parties an opportunity to supplement the record with regard to damages. (Doc. 105). Halliburton took the opportunity to do so. (*See* Doc. 106).

As to the relevant discovery in this matter, Halliburton served discovery requests, including requests for admission, on Snyder and SMS on April 25, 2018, and again on May 11, 2018 (Doc. 102-2 at 1–4; Doc. 94). On July 13, 2018, following Snyder's and SMS's failure to respond to discovery requests, Halliburton filed its Partial Motion for Summary Judgment that is now before the Court. (Doc. 102). Neither Snyder nor SMS have responded to Halliburton's Motion, and Snyder has not filed any document with the Court since May 9, 2018. (Doc. 94).

OVCH also asserted crossclaims against Snyder and SMS, third-party claims against Jody Babcock (Halliburton's administrative specialist), and counterclaims against Halliburton. (Doc. 66). On June 28, 2018, the Court, upon the parties' joint motion, dismissed with prejudice the following: (1) Halliburton's claims against OVCH and Shortall; (2) OVCH's counterclaims against Halliburton; (3) OVCH's third-party claims against Babcock; (4) OVCH's crossclaims against Snyder and SMS; and (5) Babcock, Shortall and OVCH as parties to the lawsuit. (Doc. 101).

## II.  LEGAL STANDARDS

When a defendant is in default, as SMS is here, the well-pleaded allegations of the complaint as to liability, but not damages, must be taken as true. *United States v. Conces*, 507 F.3d 1028, 1038 (6th Cir. 2007). Rule 55(b)(2) governs all cases in which a court enters a default judgment. *Zuffa, L.L.C. v. Holtsberry*, No. 3:12-cv-1191, 2013 WL 183861, at *2 (N.D. Ohio Jan. 17, 2013). Under the Rule, if a plaintiff's claim on which default is entered is not for a sum certain

or a sum that can be made certain by computation, an evidentiary hearing generally is required. Fed. R. Civ. P. 55(b)(2). An evidentiary hearing is not required, however, "'if sufficient evidence is submitted to support the request for damages or if the amount claimed is one capable of ascertainment from definite figures in the documentary evidence or affidavits.'" *Ayers v. Receivables Performance Mgmt., LLC*, No. 2:15-cv-12082, 2016 WL 5402962, at *3 (E.D. Mich. Sept. 28, 2016) (quoting *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 271 n.8 (E.D. Pa. 2014)); *see also Servpro Indus., Inc. v. Santoro & Sons Enter., Inc.*, No. 3:15-cv-00608, 2017 WL 1331434, at *1 (M.D. Tenn. Apr. 11, 2017) (holding that a hearing is not required if moving party submits uncontested, sworn affidavits sufficient to establish damages amount).

As for summary judgment, it is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial "responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Relevant here, "'Rule 56 does not allow district courts to automatically grant summary judgment on a claim simply because the summary judgment motion … is unopposed.'" *J&J Sports Prod.*, *Inc. v. Tonita Rest.*, *LLC*, No. 5:13-CV-382-REW, 2015 WL 9462975, at *1 n.5 (E.D. Ky., Dec. 28, 2015) (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014)). Rather, the court is obligated to "'ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed . . . .'" *Id*. At the same time, however, the court "is not required to conduct its own probing investigation

4

of the record to discover an issue of material fact when a summary judgment motion is unopposed." *Metropolitan Life Ins. Co. v. Darkow*, No. 5:09CV02482, 2010 WL 3002032, at *3 (N.D. Ohio July 30, 2010) (citing *Guarino v. Brookfield Twp. Tr.*, 980 F.2d 399, 407 (6th Cir. 1992)). Said differently, the court must "'carefully review the legitimacy of such an unresponded-to motion, even as it refrains from actively pursuing advocacy . . . for a silent party.'" *Id.*

## III. DISCUSSION

Three issues remain in this case for the Court to determine: (1) Snyder's liability; (2) what, if any, relief is due; and (3) whether summary judgment should be granted in favor of Halliburton on Snyder's negligent supervision counterclaim.

### A. Liability (Count I)

As explained, this Court already entered default judgment against SMS. (Doc. 61). Now, in the instant Motion, Halliburton seeks a liability determination against Snyder on the basis of unanswered requests for admissions. (Doc. 102). More specifically, Halliburton seeks judgment that Snyder is liable on Count I (Fraud). (*See, e.g.*, *id.* at 1).

To begin, the Undersigned finds that Halliburton properly served discovery at issue, and the requests have gone unanswered. Halliburton provides evidence in the form of affidavits with accompanying exhibits from its two attorneys, regarding service of Halliburton's First Set of Discovery Requests, which contained requests for admission upon Snyder. (Doc. 102-1). Halliburton's evidence shows that Snyder was served with the discovery, including Halliburton's requests for admission, by mailing the requests to their last known address and by emailing the request to Snyder on April 25, 2018. *See* Fed. R. Civ. P. 5(b)(2)(C); (Doc. 102-1 at 1–4; Doc. 102-2). In response to the Court's Show Cause Order from that same date (Doc. 90), Snyder provided the Court an alternative email address and requested that he be served and notified electronically

5

at this email address. (Doc. 94). Therefore, Snyder consented to service by electronic means at his alternative email address. *See* Fed. R. Civ. P. 5(b)(2)(E). On May 11, 2018, Halliburton again served the discovery (including the requests for admission). (Doc. 102-1 at 1–4). Pursuant to Rules 33(b)(2), 34(b)(2)(A), 36(a)(3), and 6(d) of the Federal Rules of Civil Procedure, the deadline to respond to the First Set of Discovery Requests was May 28, 2018. Snyder and SMS never responded. (Doc. 102-1 at 1–4). Consequently, based on the available evidence, the Court finds that Halliburton made sufficient efforts to serve the discovery requests upon Snyder, that Snyder was in fact served with such requests, and that he failed to respond to such requests.

Because Halliburton properly served discovery on Snyder, including the requests for admission, the Undersigned deems Snyder to have admitted the requests for admission. It is proper for the Court to rely on this evidence. *See Lovejoy v. Owens*, 86 F.3d 1156 (6th Cir. May 28, 1996) (holding that because plaintiff failed to respond to the discovery requests pursuant to Fed. R. Civ. P. 36(a), he, by default, admitted to the defendants' requests for admissions); *Tracy v. Heffron*, 822 F.2d 60, 60–61 (6th Cir. 1987) ("The district court correctly deemed the requests for admissions to have been admitted by plaintiff because he did not respond to them pursuant to Rule 36(a)[.]"); *Info-Hold, Inc. v. Muzak LLC*, No. 1:11-CV-283, 2013 WL 940393, at *3 (S.D. Ohio Mar. 8, 2013) ("Defendants' unanswered requests for admission are binding admissions for purposes of this action.") (citing *Heffron*, 822 F.2d at 60–61).

Through the admissions now deemed admitted, Halliburton has established Snyder's liability on Count I (Fraud). Because this Court's jurisdiction in this case is premised on diversity of citizenship under 28 U.S.C. § 1332, the Court applies the substantive law of the state in which it sits, Ohio. *See, e.g.*, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In Ohio, the necessary elements of fraud are: (1) a representation or, when there is a duty to disclose, a

concealment of fact; (2) which is material to the transaction at hand; (3) made falsely; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance on the representation or concealment; and (6) an injury proximately caused by that reliance. *See AAA Installers v. Sears Holdings Corp.*, 764 F. Supp. 2d 931, 939 (S.D. Ohio 2011) (quoting *Wing v. Anchor Media, Ltd.*, 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099 (Ohio 1991)); *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998).

First, Snyder admits that in September 2016, he represented to Babcock that Halliburton could lodge its crews in apartments instead of hotels at an all-inclusive per-person nightly rate of $34.99 with no obligations and that the apartments were to function as a hotel. (Doc. 102, Ex. A, Ex. 1, RFA Nos. 34–36 (seeking admissions that Snyder represented to Babcock that Halliburton could lodge its crews in apartments instead of hotels at an all-inclusive per-person nightly rate of $34.99 with no obligations)).

Second, this representation was material because Babcock executed a credit card form that authorized Snyder and SMS to charge Halliburton's credit card, and Halliburton subsequently arranged for and used Snyder and SMS's lodging services. (Doc. 102, Ex. A, Ex. 1, RFA No. 57 (seeking admission that Snyder fraudulently overbilled and overcharged Halliburton)).

Third, the Court finds that Snyder made this representation falsely. Snyder charged Halliburton in excess of the $34.99 rate (Doc. 102, Ex. A, Ex. 1, RFA No. 41) by charging for crew members that did not use apartments arranged by Snyder and SMS (*id*., RFA No. 43); for apartments that were not occupied by Halliburton crew members (*id*., RFA No. 45); for more than the actual number of nights a Halliburton crew member used the apartments (*id*., RFA No. 47); for unoccupied bedrooms in apartment units unused by Halliburton crew members (*id*., RFA No. 49); for miscellaneous items that should have been included in the $34.99 per-person nightly rate (*id*.,

7

RFA No. 51); for brokering fees (*id.*, RFA No. 53); and for prepaid apartments rather than nightly charges (*id.*, RFA No. 55; Doc. 10 at ¶¶ 60, 99).

Fourth, Snyder intended to mislead Halliburton because, as admitted, they charged Halliburton the agreed upon $34.99 rate for the duration of the stay or minimum stays on September 26, October 6, and October 12, 2016, in order to gain Babcock and Halliburton's trust, before later overbilling Halliburton from October 19, 2016 through February of 2017. (Doc. 102, Ex. A, Ex. 1, RFA Nos. 33, 57; *see* Doc. 10 at ¶¶ 97–99).

Fifth, Halliburton justifiably relied on these representations. This is so because Snyder confirmed the proposed rate in writing to Babcock. (*Id.*, RFA Nos. 33, 57). As such, the reliance was reasonable.

Finally, Halliburton was injured. Snyder admits that he and SMS improperly obtained funds from Halliburton. (Doc. 102, Ex. A, Ex. 1, RFA Nos. 79–81 (seeking admissions that SMS and Snyder improperly obtained funds from Halliburton)). As such, there is no genuine issue of material fact that Halliburton was directly injured as a result of Defendants' fraudulent overcharging. Consequently, the Undersigned concludes that Halliburton has established each of the necessary elements of a fraud claim under Ohio law.

**B. Relief**

Halliburton seeks compensatory damages, injunctive and declaratory relief, and punitive damages, attorney fees, and costs.

*1. Compensatory Damages*

While Halliburton's request for monetary relief is unopposed, this Court must determine, consistent with Rule 55 of the Federal Rules of Civil Procedure, whether Halliburton has sufficiently supported its requested damages amount.

Halliburton asserts, under a disgorgement theory, that it is entitled to compensatory damages on its fraud claim (Count I). In support, Halliburton relies on the affidavit of its Procurement Card Admin/Sr. Business Process Specialist, Armand Villacorte, and the affidavit of its expert, J. Michael Nesser.

Villacorte serves as Halliburton's Procurement Card Admin/Sr. Business Process Specialist. (Doc. 106-1, ¶ 2). Villacorte swears that Halliburton credit card account number XXX-531113-XXXXX was issued to former Halliburton employee Jody Babcock. Villacorte attached to the affidavit credit card statements for account XXX-531113-XXXXX, covering the time period from September 17, 2016 to February 16, 2017 ("the Babcock Statements").

Nesser, a certified public accountant, analyzed the Babcock Statements. He also reviewed what he defines as "the Record Evidence," which includes, *inter alia*, lodging invoices, crew lists, rooming/apartment lists, and a list of properties maintained by Snyder and SMS. Comparing the Babcock Statements to the Record Evidence, Nesser made the following conclusions:

> For October 17th through November 16th of 2016, $96,071.10 of the $146,689.97 charged to Halliburton represents estimated unsupported charges. The $146,689.97 charged to Halliburton divided by the nightly rate of $34.99 per person represents 4,192 stays by Halliburton crew members. However, the [Record] Evidence supports only approximately 1,447 crew nightly stays by members at the Snyder Parties' lodging services during this time, (based upon the estimated number of maximum crew member stays per month in the geographic locations assigned based upon crew records) resulting in an estimated difference of 2,746 stays that the Record Evidence indicates were improperly charged to Halliburton. Those 2,746 stays multiplied by the $34.99 per person per night rate, result in $96,071.10 of estimated overcharges by the Snyder Parties to Halliburton for this period of time.
>
> For November 17th through December 16th of 2016, $154,873.59 of the $203,859.59 charged to Halliburton represents estimated unsupported charges. The $203,859.59 charged to Halliburton divided by the nightly rate of $34.99 per person represents 5,826 stays by Halliburton crew members. However, the Record Evidence supports only approximately 1,400 crew nightly stays by members at the Snyder Parties' lodging services during this time, (based upon the estimated number of maximum crew member stays per month in the

geographic locations assigned based upon crew records) resulting in an estimated difference of 4,426 stays that the Record Evidence indicates were improperly charged to Halliburton. Those 4,426 stays multiplied by the $34.99 per person per night rate, result in $154,873.59 of estimated overcharges by the Snyder Parties to Halliburton for this period of time.

For December 17th through January 16th of 2017, $256,427.60 of the $332,355.90 charged to Halliburton represents estimated unsupported charges. The $332,355.90 charged to Halliburton divided by the nightly rate of $34.99 per person represents 9,499 stays by Halliburton crew members. However, the Record Evidence supports only approximately 2,170 crew nightly stays by members at the Snyder Parties' lodging services during this time, (based upon the estimated number of maximum crew member stays per month in the geographic locations assigned based upon crew records) resulting in an estimated difference of 7,329 stays that the Record Evidence indicates were improperly charged to Halliburton. Those 7,329 stays multiplied by the $34.99 per person per night rate, result in $256,427.60 of estimated overcharges by the Snyder Parties to Halliburton for this period of time.

(Doc. 106-2 at 5–6).

In all, Nesser found that "the Record Evidence therefore indicates that approximately $507,372.29 was improperly assessed and overcharged to Halliburton by the Snyder Parties." (*Id.* at 2). After review, the Undersigned agrees and is satisfied with Halliburton's provided documentation to support a compensatory damages award of $507,372.29.

*2. Punitive Damages, Attorney Fees, and Costs*

Halliburton additionally asserts it is entitled to $500,000.00 in punitive damages, plus attorney fees and costs. Ohio law applies to the question of whether Halliburton has met its burden in its request for punitive damages. *See, e.g.*, *Lawson v. Dutch Heritage Farms, Inc.*, 502 F. Supp. 2d 698 (N.D. Ohio 2007) (applying Ohio law to determine whether punitive damages can be recovered); *Cooley v. Lincoln Elec. Co.*, 776 F. Supp. 2d 511 (N.D. Ohio 2011) (applying the substantive law of the state where the cause of action arose to determine whether punitive damages can be recovered). Accordingly, the Court applies Ohio law to determine whether punitive damages are warranted here.

In Ohio, "[t]he purpose of punitive damages is not to compensate the plaintiff, but to punish and deter the defendant's conduct." *McFarren v. Canton*, 59 N.E.3d 652, 668 (Ohio Ct. App. 2016) (quotation omitted). "Actual malice" is necessary for an award of punitive damages. *Kelley v. Sullivan*, No. cv-17-877312, 2018 WL 1779373, at *2 (Ohio Ct. App. Apr. 12, 2018) (citation omitted). More specifically, in cases involving fraud, the party seeking punitive damages must show that "the actions of the defendant demonstrate malice or aggravated or egregious fraud." *See* O.R.C. § 2315.21(C). Fraud is "aggravated" if it is accompanied by the existence of malice or ill will, and fraud is "egregious" if the fraudulent wrongdoing is particularly gross. *See Charles R. Combs Trucking, Inc. v. Int'l Harvester Co.*, 466 N.E.2d 883, 888 (Ohio 1984).

The plaintiff bears the burden of establishing it is entitled to punitive damages by clear and convincing evidence. *Kelley*, 2018 WL 1779373, at *2. Importantly, "[a] trial court lacks authority to award punitive damages in the absence of evidence supporting the punitive damage award." *Id.* (citing *K Ronald Bailey & Assocs. Co., L.P.A. v. Soltesz*, No. E-05-077, 2006 WL 1364019 (Ohio Ct. App. May 19, 2006) (holding that although fraud was established, trial court erred in awarding punitive damages because there was no evidence submitted to support the award of punitive damages)). In assessing whether punitive damages are appropriate, a court "must consider the 'reprehensibility of the defendant's conduct, the disparity between the harm suffered by the plaintiff and the amount of the punitive damages award, and the difference between the punitive damages award and civil or criminal penalties authorized or imposed in similar cases.'" *Id*. (quoting *Dardinger v. Anthem Blue Cross & Blue Shield*, 781 N.E.2d 121, 140 (Ohio 1999)). "[T]he degree of reprehensibility of the defendant's conduct is the most important indicium of the reasonableness of a punitive damages award." *Id*. (quotation omitted).

Accordingly, here, the Court must determine whether Halliburton has shown by clear and convincing evidence that Snyder and SMS acted with actual malice as defined by Ohio law. The Undersigned concludes that Halliburton has not satisfied this burden. To start, Halliburton relies exclusively on the admission that SMS and Snyder acted with actual malice. (*See* Doc. 102 at 12 (citing *id.*, Ex. A, Ex. 1, RFA No. 86)). An Ohio appellate court recently noted that "[a]dmissions deemed admitted by default may satisfy the preponderance of the evidence measure of proof, but the clear and convincing standard requires something more." *Kelley*, 2018 WL 1779373, at *3 (finding that because the facts were deemed admitted in the requests for admission, there was no evidence establishing that defendant's failure to perform under the contract "was driven by actual malice, hatred, or ill will[.]"). The Undersigned finds that reasoning persuasive here. Because Halliburton relies on only the facts deemed admitted by default, it is difficult to ascertain the "actual reasons" behind SMS and Snyder's actions in order to establish whether SMS and Snyder acted with actual malice. *See id*.

Further, even if the Court was able to determine that SMS and Snyder acted with actual malice, punitive damages are not automatically recoverable; rather, "their allowance is discretionary." *Id*. (citing *Roark v. Rydell*, 881 N.E.2d 333, 344 (Ohio Ct. App. 2007)). In other words, even if a court finds that the defendant was motivated by actual malice, the court is not required to award the plaintiff punitive damages. *See id*. As noted, SMS and Snyder's "admission" that it acted with ill will does not establish by clear and convincing evidence the presence of egregious fraud or actual malice. Indeed, punitive damages "are only allowed in extraordinary cases," *S.H.Y., Inc. v. Garman*, No. 14-04-04, 2004 WL 2980370, at *9 (Ohio Ct. App. 2004), and as such, a more stringent burden applies. Here, the Undersigned concludes that this is not an extraordinary case warranting punitive damages. *See Kelley*, 2018 WL 1779373 at *3; *Turchan v.*

12

*Equity for Life, LLC*, No.2:07-cv-435, 2010 WL 2901751, at *2 (S.D. Ohio July 22, 2010) (awarding compensatory damages upon default judgment but declining to award punitive damages because party "failed to provide adequate justification").

Because their entitlement to punitive damages appears to be Halliburton's only basis for requesting attorney fees and costs, the Undersigned likewise recommends denying attorney fees and costs.

### 3. *Declaratory and Injunctive Relief (Counts V, VI)*

Halliburton additionally seeks declaratory and injunctive relief in connection with the purported "Sole and Exclusive Lodging Vendor Contract and Service Agreement." (Doc. 102). Specifically, Halliburton seeks a declaratory judgment that Snyder and SMS were never agents of Halliburton, and that they never had, and presently do not have, any authority to obligate Halliburton. (*Id*.). As to the purported contract, Halliburton contends that it is void and of no force or effect because Snyder forged Babcock's signature. (*See generally* Doc. 102). In contrast, Snyder (who is not a party to the alleged contract) contends that the purported contract between SMS and Halliburton is valid and enforceable and that Halliburton has breached the contract. (Doc. 44 at ¶¶ 7–10).

Declaratory relief is appropriate to "declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201. The Court considers a number of factors in determining whether declaratory relief is appropriate. *See Grand Trunk W.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (considering "whether declaratory action would settle the controversy"; whether it "would serve a useful purpose in clarifying the legal relations at issue"; whether it "is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata"; whether it "would increase friction between our

federal and state courts" or "encroach upon state jurisdiction"; and whether "there is an alternative remedy which is better or more effective.") (citations and quotations omitted).

Courts routinely enter declaratory judgments in cases involving contract disputes. *See, e.g.*, *4218868 Can., Inc. v. Kwasny*, No. 1:14-CV-571, 2015 WL 12778374, *15–16 (N.D. Ohio Sept. 17, 2015) (granting plaintiff's motion for summary judgment for declaratory relief in a contract dispute); *Mongan v. Lykins*, No. 1:09-CV-00626, 2010 WL 2900409, *12–13 (S.D. Ohio July 21, 2010) (granting plaintiff's motion for summary judgment for breach of contract, declaratory judgment, and permanent injunction claims in a stock ownership dispute). Relevant here, under Ohio law, contracts are generally rendered void by forgery. *See Anderson v. Delta Funding Corp.*, 316 F. Supp. 2d 554, n.3 (N.D. Ohio 2004) (citing Restatement (Second) of Contracts § 7 cmt. a). A transaction is wholly void where there is fraud in the execution of an agreement, such as forgery of a signature. *See Campco Distributors, Inc. v. Fries*, 537 N.E.2d 661, 665 (Ohio Ct. App. 1987) (citations omitted). Indeed, where there is a forgery, the transaction is considered "non-existent." *DRFP L.L.C. v. Republica Bouvariana De Venezuela*, No. 2:04-CV-0793, 2016 WL 3996719 (S.D. Ohio July 22, 2016).

Declaratory relief is appropriate and necessary to settle the current contract dispute between Halliburton and Defendants. With regard to Count 5—Halliburton's request for a declaratory judgment that the purported contract is void and of no legal effect (Doc. 2 at ¶ 104)—the Undersigned finds that Halliburton is entitled to the declaratory and injunctive relief it seeks. To begin, Defendants admit that Snyder, the sole agent for SMS, "forged the signature of Jody Babcock." (*Id.*, RFA No. 18). Further, Snyder and SMS also admit Babcock never signed the document. (*Id.*, RFA No. 17).

Based on the foregoing, the Undersigned recommends granting Halliburton declaratory relief that the purported "Sole and Exclusive Lodging Vendor Contract and Service Agreement" is void and of no legal effect, that Halliburton has no duties or obligations arising thereunder, and that Halliburton owes no money to Snyder or SMS in connection with the void contract. Further, Snyder and SMS are permanently enjoined from using the void contract in any way, including presenting the forged and void contract to individuals and entities for any purpose, including the purpose that Snyder and SMS have authority to act on behalf of, in connection with, or in affiliation with Halliburton in any way.

Halliburton is also entitled to declaratory and injunctive relief as to Count 6—seeking declaratory relief that Snyder and SMS were never agents of Halliburton, are not presently agents of Halliburton, and that they never had, and presently do not have, any authority to obligate Halliburton. (Doc. 10 at ¶¶ 144–52). Snyder and SMS admit they were not agents of Halliburton, even though they falsely identified as such. (Doc. 102-1, Ex. 1, RFA Nos. 19–26, 29–30 (seeking admissions that Defendants, without having the authority to do so, held themselves out as agents of Halliburton, and that Snyder falsely identified and held himself out as the "Halliburton Lodging Consultant"); Doc. 10 ¶¶ 144–52).

Based on the foregoing, the Undersigned recommends granting Halliburton declaratory relief that Snyder and SMS are not agents of Halliburton, were never agents of Halliburton, have no authority to bind Halliburton, and have no authority to act on Halliburton's behalf in any way. Moreover, Snyder and SMS are permanently enjoined from acting in any way which would give the impression they are agents of Halliburton or have authority to act on Halliburton's behalf.

**C. Negligent Supervision Counterclaim**

Finally, Halliburton is entitled to summary judgment as a matter of law on Snyder's negligent supervision counterclaim because there is no genuine dispute as to any fact. Summary judgment is appropriate when, "after adequate time for discovery and upon motion," a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 321. The party seeking summary judgment "always bears the initial responsibility" for demonstrating, through "answers to interrogatories[] and admissions," the "nonmoving party has failed to make a sufficient showing on an essential element" of their claim. *Id.* at 323. Here, Snyder cannot establish any element of his counterclaim.

A party asserting a claim or counterclaim for negligent supervision must establish five criteria. *See Bush v. Am. Honda Motor Co., Inc.*, 227 F. Supp. 2d 780, 801 (S.D. Ohio 2002) (quoting *Steppe v. Kmart Stores*, 737 N.E.2d 58, 66 (Ohio Ct. App. 1999)). A claimant must establish:

> (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries.

*Id.* Here, by admission, Snyder cannot demonstrate any element, let alone all five.

Snyder bases his negligent supervision claim on the following allegations: (1) Babcock held herself out as a Halliburton employee with authority to make decisions on behalf of Halliburton regarding lodging; (2) Halliburton had a duty to instruct its employees not to make improper representations; (3) Halliburton should have known that Babcock held herself out as having authority to make lodging decisions; (4) Halliburton had a duty to minimize the possibility of negligence and ensure proper supervision over its employees; and (5) Babcock's false

representation that she had authority to issue directives and make decisions regarding lodging on behalf of Halliburton proximately caused Snyder's injuries. (Doc. 44, Counterclaims at ¶¶ 50–62).

Snyder's claims fail as a matter of law. Snyder admits he has no factual or legal basis for this counterclaim. (Doc. 102-1, Ex. 1, RFA Nos. 98–99). Moreover, Snyder admits Halliburton was not negligent in hiring, retaining, or supervising Babcock or its other employees with whom Snyder may have come into contact. (*Id.*, RFA Nos. 100–106 (seeking admissions that Halliburton was not negligent in its hiring, retention, or supervision of Babcock or any other Halliburton employee with whom Defendants interacted and that such employees were not incompetent)). Snyder and SMS also admit neither Halliburton, Babcock, nor any of its employees with whom they may have come into contact with ever harmed Snyder or SMS. (*Id.*, RFA Nos. 107–108). And, Snyder and SMS further admit they did not suffer any damages, either direct or proximate, because of any action or inaction by Halliburton or its employees. (*Id.*, RFA Nos. 109–110).

Based on these admissions, Snyder has failed to demonstrate any element of his negligent supervision counterclaim. Therefore, the Undersigned concludes that Halliburton has satisfied its burden and is entitled to judgment as a matter of law as it pertains to Snyder's negligent supervision counterclaim against Halliburton.

## IV. CONCLUSION

For the reasons stated, it is **RECOMMENDED** that Halliburton's Partial Motion for Summary Judgment be **GRANTED in part**, consistent with this Report and Recommendation, (Doc. 102), that Halliburton be **GRANTED** summary judgment on Snyder's negligent supervision counterclaim (Doc. 44), and that final judgment in this matter be entered in favor of Halliburton for $507,372.29.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date: December 13, 2018                          /s/ Kimberly A. Jolson
                                                 KIMBERLY A. JOLSON
                                                 UNITED STATES MAGISTRATE JUDGE